**In re CASTRE, INC., a Nevada corporation, dba Clear Images, Inc., dba Digital Output Solutions, Debtor.**

**No. 03–22159–HRT.**

United States Bankruptcy Court, D. Colorado.

May 28, 2004.

F. Kelly Smith, Denver, CO, for Debtor.

Joanne C. Speirs, Denver, CO, for Trustee.

### ORDER REGARDING SALE
### OF ASSETS

HOWARD R. TALLMAN, Bankruptcy Judge.

THIS MATTER comes before the Court on the Debtor's Second Motion Pursuant to 11 U.S.C. § 363 to Sell Virtually All of Its Assets Outside the Ordinary Course of Business (the "Sale Motion").

The Court finds that:

a. Notice of the Sale Motion has been provided to creditors and parties-in-interest.

b. The Court received no objections to the sale or any objections have been overruled.

c. Of several potential bidders, two—All Copy Products, Inc. ("All Copy") and Advanced Copy Systems, Inc. ("Advanced")—have submitted qualified bids based on the requirements of Canon USA, Inc. and the Dealer Agreement to be assigned to the successful bidder.

d. The Court has held a hearing to consider the competitive bidding procedures, at which time the Debtor and bidders agreed to certain bidding and asset inspection procedures.

e. The Court has held at least four hearings for conducting the competitive bidding process and has met *in camera* with each bidder, the Debtor and the United States Trustee to consider their confidential and proprietary business information. The evidence was reopened to consider certain ex parte information from the two minority shareholders of All Copy received by the Court following the close of evidence at the auction and Sale Motion hearing, but before the Court could rule. Since that information questioned All Copy's ability to perform the terms of its pending bid, the Court felt it imperative that the parties be given a chance to review that information and the Court took the extraordinary measure of allowing the bidders to participate.

f. The Debtor has chosen All Copy over Advanced as the successful bidder.

The Court has considered the evidence and arguments presented at all of the hearings regarding the Debtor's selection of the highest and best bid based on its business judgment.

## DISCUSSION

The 2nd Circuit's decision in *In re Lionel,* 722 F.2d 1063 (1983), established the most cited authority that the proper standard for the Court's use in considering a proposed motion to sell is the "business judgment" test.

 Under that standard, the trustee or Debtor–in–Possession ("Debtor" or "DIP") has the burden to establish sound business reasons for the terms of the proposed sale. The factors for the Court to consider in whether to approve the sale include:

a) Any improper or bad motive;

b) The price is fair and the negotiations or bidding occurred at arm's length; and

c) Adequate procedures, including proper exposure to the market and accurate and reasonable notice to all parties in interest.

The Court finds guidance in the case of *In re Gulf States Steel Inc. of Alabama,* 285 B.R. 497 (Bankr.N.D.Ala.2002), to further refine or explain those factors. The trustee's business judgment must be evaluated

a) As to the propriety of the Sale Motion and the "stalking horse" bid of All Copy embodied with it.

b) As to the preparation for and conduct of the auction; and

c) As to the highest and best bid received.

 The Court notes that most factors address "process" issues concerning the sale, rather than the "business" rationale for why the successful bid was chosen. The Court has, at the hearings on this matter, ruled on disputes or generally advised the parties that this sale process has been properly conducted. The Court finds that

a) The DIP's decision to sell the assets by the Sale Motion is sound since the Chapter 11 case cannot continue as an operating business and the DIP's assets are decreasing in value and certainly will by the end of month if closing does not occur.

b) Notice has been adequate.

c) The conduct of the auction and the bidding process has been spirited and both "stalking horse" All Copy and challenger Advanced have had significant input into the preparation for and con-

duct of the auction. Admittedly, Advanced has expressed concerns that the Debtor has not been as forthcoming and as cooperative with providing information as it has with All Copy. However, the Court has no specific evidence before it to suggest anything more than the usual advantage that a stalking horse may obtain by being the first to step forward and offer to buy. As indicated, All Copy and Advanced provided excellent input to the sale and bidding process. Nothing further in the record substantiates that concern beyond complaints made in counsel's arguments.

Accordingly, the Court finds that the DIP exercised sound business judgment as to the propriety of the Sale Motion and as to the preparation and conduct of the auction process.

■ That brings the Court to the final issue of whether the DIP exercised sound business judgment in the selection of the highest and best bid for the sale of virtually all of its assets. At hearings, the Court has tried to be clear in its guidance to Debtor and the bidding parties regarding the auction process; the roles of the various parties in it; the standard of the Debtor's business judgment by which the Court must examine the winning bid selection process; and, an indication of some of the Court's views regarding what the process must accomplish for the estate and its creditors.

The highest and best bid is what the Court must give approval to. In a perfect world, it provides the most dollars to the estate within the most reasonable period of time and provides the most security of payment to creditors. Cash up-front is best. Here, the Court is faced with shades of gray since the offers provide different time-frames for payment of the purchase price. One proposes 12 months at $30,000 per month; one provides payments in full

in four months, but a lesser total sales price. Both deals provide the estate with a security interest in the estate's existing inventory and accounts receivable. The DIP, the United States Trustee and the Court are in difficult positions in deciding, but creditor Integrated Office Products has come forward to voice a preference for the All Copy Bid.

The Court has before it the bids of All Copy and Advanced. The Debtor has chosen All Copy's as the highest and best offer for its assets. This matter involves the sale of virtually all of the DIP's assets, so the Court believes some increased scrutiny of the sale is appropriate. See *In re Braniff Airways, Inc.,* 700 F.2d 935, 939–40 (5th Cir.1983). Essentially, the All Copy bid is a leveraged buyout of the DIP's assets that provides:

a) All Copy will pay a cash down-payment of $350,000, financing the payments by drawing down on its existing line of credit. Advanced proposes to pay $270,000 down in cash, and no financing appears to be necessary.

b) All Copy will pay the estate an additional $360,000; $30,000 per month for 12 months using funds generated by existing operations and by the Debtor's business and customer base as they are merged into All Copy's operations. Advanced proposes to pay the estate $410,000 in cash within 4 months of closing. It appears that the funds are available, but Advanced would prefer to arrange bank financing and expects no problem in doing so.

c) As added security, Mr. Knepper, President of All Copy, will provide a personal guarantee, and so will his wife, of the 12 month payment stream. Advanced asserts its bid is essentially a cash deal and, to the Court's knowledge, no such added security has been proposed.

As stated, the DIP has selected All Copy's bid. Blair Malinski, the Debtor's Vice President of Operations, testified that he has thirty years of experience in the industry and provided the reasons why the All Copy bid was chosen over Advanced's. Both bids provide for payments over time. All Copy's bid provides $30,000 more at the end of 12 months, so there is more money for unsecured creditors. In the event of either party defaulting in four months, the Debtor believes that the estate would have $350,000 plus $120,000 or $470,000 from the All Copy deal and only $270,000 at that same time from Advanced. The Knepper personal guarantee provides downside protection against a default and Mr. Knepper appears to have the assets to cover any deficiency in payment. All Copy has a bigger operation than Advanced to effectively prosecute the Debtor's assets and make for a smoother transition.

In all candor, the Court has some concerns about All Copy's ability to fund its proposed purchase. All Copy has remained in the bidding process by continuing to increase the down-payment and/or monthly payments it will make. The down-payment has gone from $250,000 to $350,000. The monthly payments have gone from $8,000 per month for 24 months to $30,000 per month over 12 months. All Copy is partly financing the purchase from its existing line of credit. A $350,000 draw against that facility is not an insubstantial amount. The remainder of the purchase price will come from All Copy's existing operations and from the additional revenues it projects will come from operating with the Debtor's assets.

Finally, the testimony revealed potential problems or disputes that might arise from Mr. Knepper's pending, proposed buy-out of All Copy's two other shareholders. The asset and stock valuation disputes that can accompany such processes may cause significant distractions that could adversely affect All Copy's continuing operations over the next year. But the Court has found nothing in the testimony of the witnesses, which indicates that this is a situation which has not been considered and analyzed by the Debtor. And so, the Court will not overrule that judgment.

Again candidly, in light of all the above, the Court may have decided differently if it were acting in the Debtor's or trustee's role. But, the Court has no personal stake in the two bids before it. Rather, the Court must be guided by the standards established by the Bankruptcy Code and the case law. Those standards provide that

■ a) In enacting the Bankruptcy Code, Congress expressed its specific intent that Bankruptcy court judges should not participate in the administration of bankruptcy estates, but leave that task to the trustee. 11 U.S.C. § 704, *Gulf States Steel*, 285 B.R. at 516.

■ b) A trustee or DIP is responsible for administering the bankruptcy estate and his, her or management's judgment on the sale of estate assets and the procedure for sale is entitled to respect and deference from the Court, as long as the burden of giving sound business reasons is met. *Id.* at 514.

■ c) The Bankruptcy Court has the power to disapprove a proposed sale recommendation by the trustee or DIP, if the Court has an awareness that there is another proposal in hand which, from the estate's point of view, is better or more acceptable. In re *Broadmoor Place Investments, L.P.*, 994 F.2d 744 (10th Cir. 1993).

■ d) However, the trustee or DIP is entitled to great judicial deference in deciding which bid to accept as the best and highest bid on the sale of the Debtor's

assets; and, although the trustee's or DIP's discretion is not without limit, the Court should not step in and assume a role and responsibility properly placed by the Code in another's hands. *Gulf States,* 285 B.R. at 516.

In the final analysis, the Court believes it should approve the Debtor's recommendation for the All Copy bid. It is in a better position than the Court to choose between its two suitors. The DIP knows the industry and hopefully, after eleven months in Chapter 11, its business and which bidder may be best positioned to take advantage of the opportunity. The DIP has negotiated with the bidders and has reviewed any financial data they have provided. The DIP and the bidders agreed to a Present Value Analysis that used a constant 6% capitalization rate or risk factor as a way of comparing the bids' two different proposed payment streams. The Court does not find such static risk analysis to be of much help. However, all other things remaining constant, even where the All Copy bid is assigned a higher "cap rate" for its eight-month longer payment period, possibly as high as 15% to 18%; and, where the Advanced bid is assigned a lower rate, as low as 4%—5% for its more rapid payout, the All Copy bid is still marginally higher.

The Court also finds that both All Copy and Advanced have acted in good faith pursuant to 11 U.S.C. § 363(m). There is no evidence that the sale or bidding process has been tainted by fraud, collusion or bad faith motives. All negotiations and bidding occurred at arms-length. As the initial bidder, or stalking horse, All Copy may have had earlier and more contact with the DIP with concomitantly more exposure to the DIP's assets. However, it is apparent that All Copy faced and met significant competition from Advanced as part of the sale process. After considering the information received from the two minority shareholders and the evidence and arguments concerning it, the Court still finds the bidders have acted in good faith. The Court commends the parties for each of their efforts during this sale process.

For the foregoing reasons, it is hereby ORDERED

1. That the Debtor's Second Motion Pursuant to 11 U.S.C. § 363 to Sell Virtually All of Its Assets Outside the Ordinary Course of Business, dated April 29, 2004, is GRANTED.

2. That the Debtor shall submit to the Court forthwith an Order approving the sale consistent with this Court's ruling.

3. Advanced's bid will be considered a back-up bid in the event that All Copy is unable to close this sales transaction within fourteen (14) days of this Order.

4. That the Court will set hearings under separate Orders on the United States Trustee's Motion to Convert, and the Motions of RWM Leasing, Inc. and Blair Malinski for Allowance of Postpetition Administrative Expenses, and the Objections by the United States Trustee and the Joinder by Canon USA, Inc.